**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
                               :
UNITED STATES OF AMERICA       :
                               :
        v.                     :  Criminal No. 3:19-cr-266(AWT)
                               :
R. JEFFREY YATES               :
                               :
------------------------------ x
```

**RULING ON MOTION TO TRANSFER**

The defendant, R. Jeffrey Yates, is charged in a thirteen-count Superseding Indictment with one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; seven counts of health care fraud, in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2; and five counts of wire fraud, in violation of 18 U.S.C. § 1343.  Yates has moved to transfer this case to the Central District of California.  For the reasons set forth below, the motion to transfer is being denied.

**I.   FACTUAL BACKGROUND[1]**

The Patient Protection and Affordable Care Act, as amended by the Health Care and Education Reconciliation Act of 2010 ("ACA"), expanded options for purchasing health insurance by establishing health insurance exchanges or marketplaces to enable individuals and small businesses to shop for health

---

[1] The factual background is drawn from the Superseding Indictment (ECF No. 49) unless otherwise specified.

insurance.  Many states, including Connecticut, set up state
health care exchanges, through which state residents could
enroll in health insurance plans ("ACA Plans") online.
Residents of states that did not set up state health care
exchanges could enroll through the federal marketplace website.
Under ACA regulations, in order to be eligible to enroll in an
ACA Plan, an individual had to be a U.S. citizen or national or
be lawfully present in the United States, not be incarcerated,
and meet the applicable residency requirement.  Under the
residency requirement, the individual seeking to enroll had to
(1) live in the service area of the particular exchange in which
he or she was enrolling, or (2) intend to reside there, or have
entered into a job commitment or be seeking employment in that
service area.  The service area was usually the entire state in
which the exchange or marketplace operated.

     The Superseding Indictment charges that, beginning in or
about December 2014, Yates conspired with Jeffrey White,
Nicholas White, and others to commit health care fraud;
committed health care fraud; and committed wire fraud.  It
alleges that Yates and the Whites, who have been charged
separately, fraudulently enrolled patients in ACA Plans that
offered the highest possible reimbursement for residential
treatment services, even though the patients were not in fact

residents of the offering state, as required by law.  Some of those ACA Plans were offered in Connecticut.

The manner and means of the charged conspiracy is alleged to be as follows.  Yates held an ownership interest in and operated Morningside Recovery ("Morningside").  Yates was the CEO of Morningside beginning in November 2013.  Morningside had its headquarters in Irvine, California and operated substance-abuse treatment facilities in the vicinity of Orange County, California.

Jeffrey White and Nicholas White, both residents of Twin Peaks, California, identified prospective patients for Morningside and enrolled the patients in ACA Plans that offered the highest possible reimbursement for residential substance-abuse treatment services.  Yates and the Whites made false representations to the ACA Plans about where the patients lived or intended to live and concealed the patients' true residences to gain eligibility in the highest-reimbursing plans available.  Some of those plans were offered in Connecticut.  At times, the Whites falsely represented to the ACA Plans that the patients had recently moved to the phony addresses to establish a Qualifying Life Event under the ACA, which would permit the patient to enroll outside the season for open enrollments.

The Whites then paid the initial premiums for the patients' enrollment in the ACA Plans and arranged for the patients'

enrollment at Morningside.  Morningside billed the ACA Plans for thousands of dollars of substance-abuse treatment services. Morningside, at the direction of Yates, would then pay the Whites a referral fee and sometimes would reimburse Jeffrey White for the insurance premiums he paid for the patients.

The Superseding Indictment identifies two patients who were allegedly fraudulently enrolled in Connecticut ACA Plans, both offered by Anthem Blue Cross Blue Shield.  As part of the conspiracy, Jeffrey White and other co-conspirators working with him enrolled a patient with a fraudulent address in Farmington, Connecticut in a Connecticut ACA plan offered by Anthem Blue Cross Blue Shield.  Morningside submitted five claims for treatment of this patient to Anthem Blue Cross Blue Shield in Connecticut.  Also as part of the conspiracy, Jeffrey White and other co-conspirators working with him enrolled a patient with a fraudulent address in Unionville, Connecticut in a Connecticut ACA plan offered by Anthem Blue Cross Blue Shield.  Morningside submitted two claims for treatment of this patient to Anthem Blue Cross Blue Shield in Connecticut.

With respect to the wire fraud counts, the Superseding Indictment charges that five communications were sent over the wires from Anthem Blue Cross Blue Shield in Connecticut to Morningside in California.

Yates emphasizes that only one Connecticut-based insurance company is alleged to have been affected by the fraud, while insurance plans from other states account for over ninety-eight percent of the reimbursements paid to Morningside.  He states that at least nine other ACA Plans offered by insurers based in California, Arizona, Delaware, Kentucky, New Jersey, Ohio, Oregon, Tennessee, and Texas are alleged to have been affected by the fraud based on enrollments of at least seventy-five other patients in addition to those fraudulently enrolled in Connecticut ACA Plans.  (Mem. of Law in Supp. Mot. to Transfer ("Def.'s Mem.") 4, ECF No. 36-1.)  Additionally, he states that almost forty percent of the alleged losses are attributable to California-based insurers.

## II.  LEGAL STANDARD

Rule 21(b) of the Federal Rules of Criminal Procedure provides that: "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  In assessing a motion to transfer under Rule 21(b), the court considers the ten factors set out by the Supreme Court in Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240 (1964):

(a) location of the defendants; (b) location of the
possible witnesses; (c) location of the events likely
to be at issue; (d) location of relevant documents and
records; (e) potential for disruption of the
defendants' businesses if transfer is denied; (f)
expenses to be incurred by the parties if transfer is
denied; (g) location of defense counsel; (h) relative
accessibility of the place of trial; (i) docket
conditions of each potential district; and (j) any
other special circumstance that might bear on the
desirability of transfer.

United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir.
1990).

Additionally, Rule 21(b) was amended in 2010 to "require[]
the court to consider the convenience of victims . . . in
determining whether to transfer all or part of the proceeding to
another district for trial."  Fed. R. Civ. P. 21 advisory
committee's note to 2010 amendment.  Thus, the court will also
consider the location of the victims.  See United States v.
Larsen, No. 13 CR 688 JMF, 2014 WL 177411, at *4 (S.D.N.Y. Jan.
16, 2014).

"No one of these considerations is dispositive, and '[i]t
remains for the court to try to strike a balance and determine
which factors are of greatest importance.'"  Maldonado-Rivera,
922 F.2d at 966 (alteration in original) (quoting United States
v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990)).  "A Court
should weigh the ten Platt factors against one another and
against the backdrop of doing what is in the overarching
interest of justice."  United States v. Spy Factory, Inc., 951

F. Supp. 450, 455 (S.D.N.Y. 1997).  "[C]ourts base their decisions on the 'quality of factors not the quantity of factors favoring one party.'"  United States v. Flom, No. 14-CR-507 RRM, 2015 WL 6506628, at *3 (E.D.N.Y. Oct. 27, 2015) (quoting United States v. Antia, No. 97 CR 733 (RJD), 1999 WL 294788, at *1 (E.D.N.Y. Mar. 22, 1999)).

The "[d]efendant bears the burden of justifying a transfer under Rule 21(b)."  United States v. Kiener, No. 3:05CR142(PCD), 2006 WL 1132910, at *2 (D. Conn. Apr. 27, 2006).  "Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court."  Maldonado-Rivera, 922 F.2d at 966.

**III. DISCUSSION**

**A.   Individual Factors**

**1.   Location of the defendant**

The first Platt factor, the location of the defendant, weighs in favor of transfer.  Yates is a resident of Orange County, California, which is in the Central District of California.[2]  Thus, the District of Connecticut is a significant distance from his residence.

---

[2] Yates argues that "as a matter of policy courts should, whenever possible, try defendants where they reside," (Def.'s Mem. at 6 (quoting United States v. Pastore, No. 17-CR-343 (NSR), 2018 WL 395490, at *2 (S.D.N.Y. Jan. 11, 2018)), but "both the Supreme Court and the Second Circuit have noted that a defendant's residence does not hold independent significance in analyzing a Rule 21(b) motion," United States v. Rodriguez, No. 16-cr-41-FPG-HBS, 2018 WL 2126429, at *3 (S.D.N.Y. May 8, 2018).

This factor is often evaluated taking into account the anticipated length of the trial.  See, e.g., Flom, 2015 WL 6506628, at *3; United States v. Larsen, No. 13 CR 688 JMF, 2014 WL 177411, at *3 (S.D.N.Y. Jan. 16, 2014).  If the trial is anticipated to be relatively short, that fact decreases the relative weight to be given to this factor.  See Flom, 2015 WL 6506628, at *3.  Here, the government argues that the trial should last between four and five days, and the defendant asserts that it will be a multi-week trial.  Based on what the court knows about the case at this time, it appears to the court that a trial in this case could well last two to three weeks, so the weight given to this factor should not be decreased due to the anticipated length of the trial.

## 2.  Location of the possible witnesses

The second Platt factor, the location of possible witnesses, weighs slightly against transfer.  With respect to possible witnesses, Yates points out that the employees and management of Morningside, who are referenced in the Superseding Indictment, and Jeffrey White and Nicholas White all reside in California, and that "it is certain that all defense witnesses reside in California."  (Def.'s Mem. at 9.)  However, the government identifies, in addition to employees and management of Morningside and the Whites, many other possible government witnesses who reside in Connecticut, including four law-

enforcement agents, representatives of the Connecticut ACA exchange, the landlords associated with the fraudulent addresses used to enroll patients in Connecticut ACA Plans, and representatives of the victim insurance company. Also, with respect to the possible government witnesses who reside in California, many of them have previously traveled to Connecticut from California in connection with this case, and it is undisputed that the government will bear the financial burden of transporting such witnesses to Connecticut to testify.

Moreover, Yates does not identify possible defense witnesses. He states that he "is not yet able to state who his defense witnesses are going to be," (Def.'s Mem. at 9.), but does offer "to submit to the Court for in camera review his list of possible defense witnesses, which could include fact witnesses and character witnesses . . . ," (Def.'s Reply Mem. in Further Supp. of Mot. to Transfer 9, ECF No. 45). Although the court understands the reluctance on the part of the defense to disclose that information to the government at this stage of the case, it is nonetheless the defendant's burden to show that transfer is justified. Courts in this circuit have held, with respect to the location of possible witnesses, that it is the defendant's burden "to show 'specific examples of witnesses' testimony and their inability to testify because of the location of the trial.'" United States v. Estrada, 880 F. Supp. 2d 478,

482 (S.D.N.Y. 2012) (quoting Spy Factory, 951 F. Supp. at 457)).
That burden is meaningless if, in opposing the motion, the
government is not afforded the opportunity to respond as to the
relative importance of particular witnesses and as to whether
particular witnesses will be inconvenienced (and to what degree)
as opposed to unable to testify.

Finally, as to the financial burden of transporting defense
witnesses to Connecticut, that will fall on the government,
because Yates is represented by counsel appointed pursuant to
the Criminal Justice Act.

### 3.   Location of the victims

With respect to the location of the victims, this factor
weighs against transfer.  The court must consider "the
convenience of victims . . . in determining whether to transfer
all or part of the proceeding to another district for trial."
Fed. R. Civ. P. 21 advisory committee's note to 2010 amendment.

Yates argues that this factor weighs in favor of transfer
because Anthem Blue Cross Blue Shield is just one of at least
ten victims who are located across the country.  That is true
with respect to Count One, which charges conspiracy to commit
health care fraud and wire fraud.  But Anthem Blue Cross and
Blue Shield is the only victim in Counts Two through Eight
(health care fraud) and Counts Nine through Thirteen (wire
fraud).  Representatives of Anthem Blue Cross Blue Shield in

addition to those who will be called to testify will likely wish to attend the proceedings.  Moreover, the fact that alleged victims are located across the United States means that moving this case to the Central District of California would be no more convenient to the alleged victims as a whole than keeping the case in this district.

**4.   Location of the events likely to be at issue**

The third Platt factor, the location of the events likely to be at issue, favors neither side.  Yates argues that "all events [alleged in the indictment] took place in California," making California the nerve center of this case, and thus the case should be prosecuted there.

Although the events which set the conspiracy in motion occurred in California, the nature of the charged conspiracy is that Yates and his co-conspirators sent fraudulent medical claims to ACA Plans across the country.  Courts in this circuit have discounted the relative weight of this Platt factor where the "defendants are alleged to have intentionally projected their fraud nationwide, including into this District." Estrada, 880 F. Supp. 2d at 483; see also United States v. Riley, 296 F.R.D. 272, 276 (S.D.N.Y. 2014) (concluding that "insider trading . . . has a 'national' impact and scope, and accordingly, the location of the events in issue weighs only slightly in favor of transfer").

The court notes that this factor as articulated by the
Supreme Court is the "location of the events likely to be at
issue," Maldonado-Rivera, 922 F.2d at 966, not simply the
location of the events.  Although Yates argues that all the
pertinent events took place in California, the crimes charged
are health care fraud, as well as wire fraud and conspiracy to
commit both offenses.  As the court explained in United States
v. Rutigliano, 790 F.3d 389 (2d Cir. 2015)--albeit with respect
to venue as opposed to a motion to transfer pursuant to Rule
21(b):

> The defendants themselves may not have been physically
> present in the Southern District of New York, but
> their presence is unnecessary for proper venue.
> Lesniewski submitted insurance claims to a health
> insurance company (and received payments) in
> connection with medical visits and procedures
> undertaken for no reason other than to deceive the
> RRB.  These payments were made by wire, and traveled
> through the waters over which the Southern and Eastern
> Districts share jurisdiction.  The submission of
> fraudulent health care reimbursement claims lies at
> the core of conduct criminalized by § 1347.

Id. at 398.

Here, the charges include that Yates and his co-
conspirators submitted fraudulent health care reimbursement
claims, "the core of conduct criminalized by § 1347," to a
Connecticut ACA plan.  Thus, they directed the charged overt
acts from California at an insurer in this district in order to
obtain fraudulent reimbursements from the Connecticut-based

insurer.  Those overt acts demonstrate that pivotal events
likely to be at issue, i.e., the submission from California of
fraudulent health care reimbursement claims to be received and
paid in Connecticut, also occurred in Connecticut to a
significant degree.  See United States v. Aronoff, 463 F. Supp.
454, 459 (S.D.N.Y. 1978) (rejecting argument that events in
indictment "were done in Michigan" because "[b]y itself, this is
immaterial, since one who uses the mails or a telephone to
acquire the money of persons in New York by fraud should hardly
be heard to complain that he did nothing in New York"); see also
Riley, 296 F.R.D. at 276 (the defendants "[we]re correct that
many of the acts alleged in the Indictment occurred in
California," but "the Indictment also allege[ed] that the
Defendants caused acts to occur in the Southern District of New
York," specifically securities transactions in the Southern
District of New York).

### 5.  Location of relevant documents and records

The fourth Platt factor, the location of relevant documents
and records, weighs against transfer.  Although "[i]t is well
settled that given the conveniences of modern transportation and
communication, the location of [discovery] is a minor concern,"
Estrada, 880 F. Supp. 2d at 484, the government argues
persuasively that special considerations exist with respect to
documents and records in this case.

-13-

The discovery material in this case consists of approximately five terabytes of information.  Four terabytes is a copy of a backup file of Morningside's entire database of records and documents; this backup file was maintained by the company Morningside retained to service and back up its computer server.  Because of the format of the copy of the backup file received by the government in response to its subpoena, "it is virtually impossible to access in any manageable format in its native form."  (Gov't's Opp'n to Def.'s Mot. to Transfer ("Gov't's Opp'n") 23, ECF No. 42.)  This four terabytes of digital information is here in Connecticut and only accessible on a piecemeal basis by FBI technicians who currently work in and are based in Connecticut.  The government represents that if the case is transferred to the Central District of California, "it is unlikely that a forensic team in California would be open to or have the resources to support an examination or further processing of the backup file," and the court credits that representation given that such teams would be likely to have preexisting priorities.  (Gov't's Opp'n at 23.)

Consequently, the court does not place any weight on the observation by Yates "that there are many people capable of data extraction in California, the global epicenter of high-tech computing."  (Def.'s Reply at 12-13.)  There is nothing that suggests that any of those many people would be both available

-14-

to the government and able to become sufficiently familiar with the issues being worked on by the forensic agents in Connecticut without unreasonable expense and delay.

### 6. Potential for disruption of the defendant's business if transfer is denied

The fifth Platt factor, the potential for disruption of the defendant's business, does not favor either side.  As the government points out, this factor refers to an adverse impact on a defendant's business or employment as the result of his absence from his home district for the trial.  See United States v. Motz, 652 F. Supp. 2d 284, 291 (E.D.N.Y. 2009) ("The Court is not concerned that the trial will disrupt business at [the defendant's firm] because the company is now defunct."); Estrada, 880 F. Supp. 2d at 484 ("Estrada has presented no evidence that his work as CEO cannot in large part or in its entirety be performed from afar via electronic communication."); Spy Factory, 951 F. Supp. at 458 (Texas defendants, including president of company, manager of family-owned art gallery, and manager of swimming pool company, had failed to show why telephone and fax communications are not sufficient to maintain minimal contact during two-month trial in New York). Morningside has completely ceased operations and Yates is currently unemployed, so having to be present in Connecticut for

the trial would not disrupt any business or employment of the defendant.[3]

### 7.    Expenses to be incurred by the parties if transfer is denied

The sixth Platt factor, the expenses to be incurred by the parties if transfer is denied, weighs slightly against transfer. Yates argues, first, that "the government's expenses arising from a transfer would be limited" (i.e., lodging and expenses for "any prosecutors or case agents based in Connecticut now" who continue working on the case); second, that the government will incur less in the way of expense for lodging and travel of its witnesses because more of them are located in California; and third, that he will have to "incur significantly greater expenses if forced to try his case in Connecticut."  (Def.'s Mem. at 10-11.)  However, on balance, transfer would result in the government incurring significantly greater expenses.  In addition to the expense of government counsel, their paralegal, and the three case agents relocating to California for trial preparation and trial, the government would incur travel and lodging expenses for witnesses who do not reside in California,

---

[3] Yates argues that disruption of his efforts with respect to recovery related to alcoholism should also be considered under this factor.  The court believes it is appropriate to consider that argument in connection with the final Platt factor, i.e., other special circumstances.

whom the government projects will equal or exceed in number its
California-based witnesses.

### 8.    **Location of defense counsel**

The seventh <u>Platt</u> factor, the location of defense counsel,
weighs against transfer.  Both of Yates's court-appointed
counsel are located in Connecticut and have represented Yates
since August 2019.  Transfer of this case would likely require
appointment of new defense counsel in California, which would
result in delay because new counsel would need to familiarize
herself with this complex case.  The defendant's current counsel
have expressed a willingness to travel to California for trial
if necessary, but there is no indication that they are admitted
in the Central District of California or familiar with its rules
and practices.

### 9.    **Relative accessibility of the place of trial**

The eighth <u>Platt</u> factor, the relative accessibility of the
proposed place of trial, does not favor either side.  Yates
argues that the federal courthouse in Santa Ana, California is
more accessible than the federal courthouse in Hartford.
However, the Hartford courthouse is a short drive from Bradley
International Airport, which has non-stop flights to and from
major cities across the United States, including Los Angeles.
Indeed, many of the non-stop destinations from the Santa Ana,
California airport, which is argued to be more convenient than

the Hartford airport, overlap with those that fly directly in
and out of Hartford.  Compare Nonstop Flights, Bradley Int'l
Airport, https://bradleyairport.com/journey/non-stop/, with
Nonstop Destinations, John Wayne Airport, https://www.ocair.com/
flightinformation/nonstopdestinations.  The defendant
erroneously states that the Hartford courthouse is "at least an
hour's drive (without traffic)" from Bradley Airport.  In
response to the government pointing out that the distance to the
airport is only 15.7 miles, the defendant maintains that the
courthouse in Santa Ana is still closer to John Wayne Airport,
i.e., 7 miles.  Such a difference is immaterial.

          **10.  Docket conditions of each potential district**

     The ninth Platt factor, the docket conditions of each
potential district, weighs against transfer.  Yates asserts that
this factor weighs slightly in favor of transfer because the
federal court management statistics for the 12-month period
ending September 30, 2019 show that there are fewer criminal
cases per judgeship in the Central District of California (i.e.,
57) than in this district (i.e., 68).  However, the caseload
statistics alone do not provide a complete picture of the
respective districts--the numbers are per judgeship, not per
judge, and not all types of criminal cases have the same degree
of complexity.  "The Court declines to speculate--simply by
looking at docket statistics--about whether the trial would be

-18-

delayed in the event of a transfer." Motz, 652 F. Supp. 2d at 292.

What is important in this case is that this court has already set dates for jury selection and trial in this case, and those dates are being held for this case. See, e.g., Canale, 2015 WL 3767147, at *4 ("More important than caseload statistics, however, is the fact that this Court has already made itself available, familiarized itself with this case, and scheduled a trial date that is convenient for both parties."); United States v. Stein, 429 F. Supp. 2d 633, 645 (S.D.N.Y. 2006) (concluding factor weighed against transfer where the "Court already ha[d] scheduled trial in this case, ensuring that defendants will receive ample attention regardless of docket conditions").  Transfer of this case to the Central District of California would likely result in a later trial date.

### 11. Any other special circumstance that might bear on the desirability of transfer

The tenth Platt factor is other special circumstances. There are four special circumstances here.  Two do not weigh in favor of either side.  One weighs in favor of transfer, and one weighs against.

First, the defendant has been battling drug and alcohol addiction for years, and he has experienced numerous relapses despite placement in multiple treatment programs.  He will be

residing in a sober house until October 2020.  His treatment
providers and support network are in California, and it is a
given that being a defendant in a criminal trial is an
incredibly stressful experience.  The court agrees that being
far away from his support network would result in an added
degree of stress for the defendant, but does not agree that the
defendant's treatment program will necessarily be disrupted--as
opposed to the defendant having to make adjustments.  This
special circumstance weighs in favor of transfer.

Second, the defendant argues that because of the
coronavirus pandemic, transferring the trial to California is in
the interest of justice because doing so "would require less
overall travel from home for all parties in the aggregate."
(Def.'s Suppl. Mem. in Further Supp. Mot. to Transfer 2, ECF No.
53.)  But, as discussed above, there are many possible
government witnesses who reside in Connecticut.  The defendant
has not demonstrated that his statement with respect to the
parties and witnesses in the aggregate is accurate.  This
special circumstance does not favor either side.

Third, the defendant has been diagnosed with Diabetes
Mellitus Type 2, and consequently, he has a high risk of severe
complications should he contract COVID-19.  Thus, he argues, it
would be unconscionable to require him to travel from California
to Connecticut.  But the situation with respect to the

coronavirus pandemic is rapidly evolving and the trial is still months in the future, and, in any event, because it is a given that travel by air will be required for a good number of participants, the trial will not be able to proceed, whether it is here or in California, until the safety of airline passengers can be reasonably assured.  This special circumstance does not favor either side.

Fourth, the court is currently presiding over the cases of named co-conspirators Jeffrey White and Nicholas White.  Both of these individuals have pled guilty and have had a draft presentence report prepared and been given a sentencing date that is soon after the scheduled trial in this case.  These facts support keeping Yates's case in this district.  The court agrees with the government that "it makes far more sense for the same Court to address any sentencing issues concerning the Whites and Yates, based on considerations of judicial economy and consistent sentencing. . . .  Indeed, if it comes to that, Yates himself may have interests in being sentenced by a judge who understands the entire scheme and Yates's and Morningside Recovery's relative role in the Whites' conspiracy."  (Gov't's Opp'n at 33.)  This special circumstance weighs against transfer.

**B.   Balancing of the Factors**

Yates has not met his burden of showing that the relevant considerations under Rule 21(b) support transfer of this case to the Central District of California.  The location of the events likely to be at issue, the potential for disruption of Yates's business, the relative accessibility of the location of trial, the effect of the coronavirus pandemic on the travel of the parties in aggregate, and Yates's diagnosis of Diabetes Mellitus Type 2 in light of the coronavirus pandemic do not favor either side.  Only two considerations, i.e., the location of the defendant and the effect of a trial in this district on his efforts with respect to recovery from drug and alcohol addiction, weigh in favor of transfer.  On the other hand, the location of the victims, the location of relevant documents, the location of defense counsel, the docket conditions of each district, and the fact that two of Yates's alleged co-conspirators will be sentenced in this court all weigh against transfer.  In addition, the location of possible witnesses and the expenses to be incurred by the parties if transfer is denied weigh slightly against transfer.  Balancing the Platt factors that are material here, the court finds that two considerations rooted in the convenience of the defendant are of less importance than the material considerations, identified above, relating to first, the convenience and interest in avoiding

-22-

undue expense of the other participants in the trial; second, fairness to the alleged victim and to defendants in related cases (as well as this defendant); and third, the court system's ability to facilitate a prompt and efficient trial. Consequently, the defendant has not met his burden under Rule 21(b) of demonstrating that a transfer is warranted here.

## IV.   CONCLUSION

For the reasons set forth above, the defendant's Motion and to Transfer to the Central District of California (ECF Nos. 35, 38, and 51) is hereby DENIED.

It is so ordered.

Dated this 18th day of June 2020, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
